```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JOSE RAMIRO GARZA CANTU,

        Plaintiff,                      MEMORANDUM AND ORDER

    -against-                           Civil Action No.
                                        CV-05-3580 (DGT/RLM)
BILLY R. FLANIGAN, UNKNOWN/UNNAMED
DEFENDANT, AND DOES 1 through 10,
inclusive,

        Defendants.

--------------------------------------X
```

TRAGER, J:

Plaintiff Jose Ramiro Garza Cantu ("Cantu") has brought this diversity action against pro se defendant and third-party plaintiff Billy R. Flanigan ("Flanigan") alleging defamation and intentional and negligent interference with economic advantage. Flanigan counterclaimed, alleging intentional interference with contract, and later filed a third-party complaint against numerous other individuals, also alleging intentional interference with contract. Cantu has filed a motion to dismiss both the counterclaim and third-party complaint.

## Background

On June 17, 2002, the United States District Court for the Eastern District of New York, pursuant to 18 U.S.C. § 981(b)(4), granted the United States an order restraining all funds in

Account No. 6MH215309 at Banorte Securities.  <u>In re: All Funds in Account 6MH215309</u>, M-02-906 (RML) (E.D.N.Y. 2003) (Levy, M.J.). The following facts have been gleaned from the decision in that underlying forfeiture action.

The owner of the account was Sindicato De Trabajadores Petroleros De La Republica Mexicana (the "Union"), the labor union for Mexican oil workers.  The United States requested the restraining order in connection with a pending criminal investigation undertaken by the Mexican government relating to embezzlement of funds from Petroleos Mexicanos ("PEMEX"), an oil and gas company owned by the Mexican government.  As part of the investigation, the Mexican government also restrained all funds in Account No. 559-01859-7 (the "Mexican account"), also owned by the Union and held at Banco Mercantil Del Norte S.A. in Mexico City.

In response to a request by the Mexican government, the United States sought a modification to the restraining order permitting the restrained funds at Banorte Securities to be transferred to the Mexican account.  The Union consented to the transfer but three non-parties objected.  One of the non-parties was Flanigan, who claimed rights to the funds through Arriba, a corporation that obtained a $92 million default judgment against the Union in 1986.  Flanigan alleges that the restrained funds are related to the 1986 default judgment.  Flanigan brought to

the attention of the district court a Writ of Garnishment issued by the Clerk of the 281st Judicial District Court of Harris County, Texas. The writ prohibits the custodian of the restrained funds at Banorte from paying them out to any claimant.

Flanigan expressed his objections to the United States' request to modify the restraining order by submitting to the court on January 10, 2005 a document he entitled "Amicus Brief." The brief contained numerous allegations regarding wrongful acts committed by PEMEX, the Union and a host of other individuals involving corruption, racketeering, money laundering and murder.

One of the individuals named in the Amicus Brief was plaintiff Cantu. The brief accused Cantu of being the operations manager of a racketeering enterprise, participating in a bribery and bid-rigging scheme and facilitating international money laundering. The brief also accused Cantu of using his contacts with Saddam Hussein to circumvent the sanctions against Iraq by purchasing Iraqi oil which was later mixed with stolen Mexican oil and sold in the United States. Subsequent to its submission to the court, some of the Amicus Brief's allegations appeared in the Mexican media.

Cantu and another individual named in the Amicus Brief moved to strike it as containing scandalous allegations unrelated to the forfeiture action. Cantu's motion was denied as moot, because Flanigan had never been granted leave to file the Amicus

Brief and it contained allegations outside the court's jurisdiction. The court clarified that because the Amicus Brief's filing was not authorized, it was not part of the record in the forfeiture case.

On July 29, 2005, Cantu brought the present suit alleging defamation, interference with contractual relations, intentional interference with prospective economic advantage and negligent interference with prospective economic advantage. Compl., ¶¶ 28-62. The complaint alleged that Flanigan submitted his Amicus Brief to the Mexican media prior to submitting it to the court. Id. at ¶¶ 16. Attached to the complaint is an article entitled "La Mafia de PEMEX" or "The Mafia of PEMEX," published in a periodical called Proceso. Compl., Ex. A. The article recites portions of the Amicus Brief nearly verbatim. The article, however, was published in February of 2005, approximately one month after the brief was submitted to the court.[1]

On August 15, 2005, Flanigan answered Cantu's complaint and included a counterclaim, alleging intentional interference with contract. Answer and Countercl. ¶¶ 69-71. The contract he alleges Cantu interfered with is the same contract that gave rise

---

[1] Despite what would appear to be a compelling defense of absolute immunity for judicial filings, Flanigan has not moved on that ground. He has instead filed a motion for summary judgment based on the affirmative defense that the allegations he made in the Amicus Brief were true. That summary judgment motion will not be addressed in this opinion.

to the 1986 default judgment. Flanigan essentially alleges that Cantu's efforts to prevent him from collecting on the 1986 default judgment constitutes intentional interference with contract. Id.

Three weeks later, on September 6, 2005, Flanigan filed a third-party complaint against a litany of defendants, many of whom were named in his Amicus Brief. The third-party complaint alleges intentional interference with contract. Third-Party Compl., ¶¶ 11-13. The interference alleged was identical to the allegations in the counterclaim.

On the same day, Cantu filed a motion to dismiss the counterclaim for failure to state a claim under Rule 12(b)(6). Less than two weeks later, on September 15, 2005, Cantu filed a motion to dismiss the third-party complaint.

**Discussion**

A complaint may not be dismissed under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also, Commercial Cleaning Serv., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001). A court considering a 12(b)(6) motion must accept the plaintiff's allegations as true and view them in the light most favorable to the plaintiff. Societe des Hotels

5

Meridien v. LaSalle Hotel Operating P'ship, 380 F.3d 126, 129-30 (2d Cir. 2004). Courts may not consider matters outside the pleadings but may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

### (1)

### Motion to Dismiss the Counterclaim

For his counterclaim, Flanigan alleges the he had

> valid and existing property and contract rights related to an original residual oil contract giving rise to a 1986 Judgment in Harris County, Texas (Case No. 85-35446), the 1986 Judgment itself and the garnishment action in the Texas 85-35446 case; Cantu had full knowledge of the existence of said property and contract rights.

Compl. ¶ 69. Flanigan asserts that Cantu induced the breach of the contract and that "beginning in 1989 and continuing through the present time," Cantu and others "entered into a conspiracy to take and have taken Flanigan's profit from said contract and used Flanigan's property for himself and interfered with Flanigan's property and contract rights." Compl. ¶ 70.

In particular, Flanigan alleges that Cantu participated in a fraudulent settlement agreement of the Harris County, Texas, state court case (85-35446) "with the intent of receiving 'kick-backs' on any funds released or collected related to the $43

6

Million seized in New York pursuant to the 85-35446 garnishment action and a federal forfeiture action." Compl. ¶ 70a. Flanigan asserts that Cantu's motive for interfering with his property and contract rights was to receive additional kick-backs on the collection of the 1986 default judgment debt, and that Cantu and others "planned to provide the location of Judgment Debtor-Union assets for purposes of garnishment which they had previously misappropriated and deposited secretly outside of Mexico." Compl. ¶ 70b. Flanigan states the Cantu and others took for their own use "approximately $250 Million loaned by Pemex to the Judgment Debtor-Union to 'take care of' Flanigan related to the 1986 Judgment debt pursuant to Administrative Labor Agreement 9442; these actions are known to the Mexican public as PEMEXGATE." Compl. ¶ 70c. Finally, Flanigan alleges that Cantu and others "participated in an $8 Million bribe, disbursed by Jose Cruz Contreras Gamboa and paid to himself and other persons opposing Flanigan in order to delay Flanigan's lawful exercise of his rights related to the collection and enforcement of the 1986 Judgment." Compl. ¶ 70d.

Cantu has moved to dismiss the counterclaim on the grounds that it (1) is barred by the statute of limitations; (2) fails to assert the existence of a valid contract; and (3) does not arise out of the same set of facts, transaction or occurrence as those alleged in the complaint.

a.   **Statute of Limitations**

Flanigan has not alleged that Cantu was a party to the contract that led to the 1986 default judgment, but rather that Cantu induced one of the parties to that contract to breach it. The counterclaim does not elaborate on the details of the alleged inducement to breach, but given that the litigation over the breach of contract resulted in a default judgment in 1986, it follows that the breach itself must have predated 1986.

The counterclaim does not describe the actions or location of Cantu when he precipitated the breach of contract, and it is, therefore, unclear from the face of the counterclaim which state's law applies to the tort of intentional interference with contractual relations. Cantu cites to New York law regarding the statute of limitations, and Flanigan does not cite any law whatsoever. However, because Flanigan resides in Texas, Cantu resides in Mexico, and the funds whose ownership they dispute are potentially located in New York – and because the choice of law will not alter the outcome – the statute of limitations will be analyzed under both Texas and New York law.[2] As neither party

---

[2] Flanigan has engaged in near-constant litigation over the contract leading to the 1986 default judgment for the past twenty years. Several other courts - including the state courts of Texas and California, a Texas federal district court and the Court of Appeals for the Fifth Circuit - have had occasion to describe in more detail the original residual oil contract and the legal dramas that followed it. See, e.g., Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528 (5th Cir. 1992). It is unnecessary to repeat those background facts in the context of

8

has argued for the applicability of Mexican law, this opinion will not discuss it.

The Texas statute of limitations for intentional interference with contract is two years. First Nat'l Bank of Eagle Pass v. Levine, 721 S.W.2d 287, 289 (Tex. 1986) (citing Atomic Fuel Extraction Corp. v. Estate of Slick, 386 S.W.2d 180 (Tex. Civ. App. - San Antonio 1964) writ ref'd n.r.e. per curiam, 403 S.W.2d 784 (Tex. 1965)); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2005).[3] The contract at issue having been breached prior to 1986, the Texas statute has clearly run.

New York has a slightly longer statute of limitations for intentional interference with contract: three years. See Spinap

---

the present motion to dismiss, other than to note that the Fifth Circuit characterized the residual oil contract as an agreement between Flanigan's company Arriba and corrupt agents of the Union's contracting arm to sell Arriba Pemex's residual oil at a rock-bottom price. The deal fell through after Arriba refused to pay bribes to Pemex and Union officials to entice them to perform their end of the bargain. The Fifth Circuit summed up the deal as an arrangement "to effect sales of Mexican government-owned residual oil 'off-the-books' of Pemex and into Arriba's tanks at a much-reduced price. Presumably the goal of this alleged arrangement was to enrich the officials wily and corrupt enough to have concocted this rogues' bargain that depended for all practical purposes upon the theft of Mexico's oil products." Arriba, 962 F.2d at 534.

[3] The statute provides: "[A] person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2005).

Corp. v. Cafagno, 302 A.D.2d 588, 588, 756 N.Y.S.2d 86, 87 (2d Dep't 2003); N.Y. C.P.L.R. § 214[4].[4]  However, New York's statute is still far too short to save Flanigan's counterclaim, which accrued at least nineteen years before he filed it.

Flanigan argues that Cantu's conduct constitutes a continuing violation - a theory which, if applicable, would allow redress for pre-limitations period conduct if the tortious conduct continued into the limitations period.  The continuing tort doctrine "provides that, in certain tort cases involving continuous or repeated injuries, the statute of limitations accrues upon the date of the last injury and that the plaintiff may recover for the entire period of the [tort], provided that an act contributing to the claim occurs within the filing period." Mix v. Delaware and Hudson Ry. Co., 345 F.3d 82, 88 (2d Cir. 2003).  One Texas court explained the rationale behind the continuing tort doctrine as follows:

> [A] continuing tort is an ongoing wrong causing a
> continuing injury that does not accrue until the
> tortious act ceases.  A plaintiff can bring a single
> suit for the period of time it sustains injuries from
> a defendant's conduct. . ..  Treating regularly-
> occurring torts, such as false imprisonment, as a
> continuing tort avoids a multiplicity of suits and
> does not force an aggrieved plaintiff to choose
> between filing successive suits or face denial of the

---

[4] The New York statute of limitations for intentional interference with contract provides: "The following actions must be commenced within three years: . . .[4] an action to recover damages for an injury to property . . .."  N.Y. C.P.L.R. § 214[4].

10

> privilege of the full limitation period in filing
> suit for each day of the false imprisonment.
> However, if each of the defendant's separate
> behaviors caused a distinct injury, the continuing
> tort rule does not apply.

Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., ___ S.W.3d ___, 2005 WL 1489681, at *6 (Tex. App. - Austin June 23, 2005).

However, tortious interference with contract is not a continuing tort, so this argument too cannot rescue the claim. See Spinap, 302 A.D.2d at 588, 756 N.Y.S.2d at 87 ("Since tortious interference with contract is not a continuing tort, it does not avail plaintiff to argue that [defendant] continued to solicit its customers up until the time of the filing of the complaint . . .."); Texas Disposal, 2005 WL 1489681, at *6 ("[Appellant] has not offered any authority nor have we found any that has broadened the continuing tort doctrine to include . . . tortious interference actions, or a tort such as [sic] the intermittent and irregular nature of the complained of actions.").

Flanigan appears to argue in his opposition brief that it is not (or not only) the pre-1986 residual oil contract that Cantu interfered with, but that he continues to hold a "property right related to [the] contract." Resp. of Def. and Counter-Claimant Billy R. Flanigan to Pl. and Counterclaim-Def. Cantu's Mot. to Dismiss the Countercl. Pursuant to Rule 12(b)(6), at 2. He

asserts that the property right has been adequately identified to sustain the counterclaim, and that Cantu's interference with that right is ongoing. In other words, Flanigan has still not recovered the money he alleges he was owed due to breach of the pre-1986 residual oil contract, and he holds Cantu at least partly responsible for thwarting his efforts to enforce the default judgment to this very day.

The dates and details of these post-1986 alleged interferences are not sufficiently fleshed out in the counterclaim itself to assess whether any of them occurred within the two or three years before the counterclaim was filed, such that they would be within either the Texas or New York statute of limitations. However, based on the Fifth Circuit opinion of 1992 (discussed at n.1, supra), which deals with the same underlying facts, it is possible to exclude at least some of Flanigan's allegations from the limitations period. See Arriba, 962 F.2d at 531-32. For example, the "fraudulent settlement scheme" mentioned in the counterclaim appears to be a October 1987 settlement releasing the default judgment that is discussed in the Fifth Circuit opinion. Id. at 531; Compl. §§ 70a, 70b.

Although the Fifth Circuit's opinion is of some assistance in identifying the dates on which some of the acts alleged in Flanigan's counterclaim occurred, it does not foreclose the possibility of Flanigan asserting some act of interference with

his alleged property rights that occurred within the limitations period. Accordingly, in the event that Flanigan is able to allege any acts of interference occurring after August 15, 2002 (three years before the filing of his counterclaim), he is given leave to assert them in an amended counterclaim to be filed within the next thirty days.

**(2)**

**Motion to Dismiss Third-Party Complaint**

Flanigan's Third-Party Complaint makes identical allegations as his counterclaim, but asserts them against Pemex, several named individuals, and Does 1 through 150. He alleges that each of the third-party defendants acted in concert with Cantu to interfere with Flanigan's contract and/or property rights relating to the 1986 default judgment. It does not appear that any of the third-party defendants, many of whom reside in Mexico, have been properly served in this action. See Mot./or Req. of Ext. of Time to Serve Foreign Mexican Nationals and Other Defs., filed Feb. 6, 2006 (asserting that third-party defendants were served via first class mail).

Cantu has moved to dismiss the third-party complaint for lack of subject matter jurisdiction; failure to comply with Fed. R. Civ. P. 14(a), in that it does not allege liability for part or all of Cantu's underlying defamation claim; and because its

claims are barred by the statute of limitations.  Flanigan responds that Cantu lacks standing to move to dismiss the third-party complaint; that the court has supplemental jurisdiction over the third-party claims; that the third-party complaint complies with Rule 14(a) because it is related to Flanigan's counterclaims; and that the statute of limitations does not bar a continuing tort.

**a.   Standing**

Addressing first the question of whether Cantu has standing to move for dismissal of the third-party complaint, at least one other court has expressed uncertainty as to whether a plaintiff may make such a motion.  See Coren v. Cardoza, 139 F.R.D. 561, 569 n.20 (D. Mass. 1991) ("It is not clear whether plaintiff have standing to move to dismiss the third party complaint which was not directed against them.").  The Rule itself, however, is clear: "Any party may move to strike the third-party claim, or for its severance or separate trial."[5]  Fed. R. Civ. P. 14(a). In addition, there can be no doubt that Cantu has an interest in

---

[5] Cantu styled his motion as a "motion to dismiss," as opposed to a motion to strike, which would presumably be brought pursuant to Rule 12(f).  Whether analyzed under Rule 12(f) or Rule 12(b)(6), the same standards of proof and evidence apply. See United States v. $79,000 in Account No. 2168050/6749900 at the Bank of New York, No. 96 CV 3493, 1996 WL 648934, at *3 (S.D.N.Y. Nov. 7, 1996) ("[W]hether this is a Rule 12(f) or a Rule 12(b)(6) motion, the test is the same and so is the outcome.").

ensuring that his defamation claim against Flanigan is not subsumed in a larger group of claims aimed at vindicating other alleged wrongs in the long history among the parties. Cf. Harry Winston, Inc. v. Kerr, 72 F. Supp. 2d 263, 266 (S.D.N.Y. 1999) (granting plaintiff's motion to dismiss third-party defendant's complaint where the 14(a) claim and plaintiff's claim against defendant "[did] not derive from a common nucleus of operative fact"). Therefore, Cantu's motion will be addressed on its merits.

**b.  Rule 14(a)**

The third-party complaint fails to conform to the restrictions of Rule 14(a), which permits a defendant to bring in a third party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). Flanigan argues that if he successfully defends against the defamation claim by proving that his statements in the Amicus Brief were true, then he will also have proven that the third-party defendants are liable to him. Rule 14(a), however, allows impleader of third-party defendants who are ultimately responsible for a plaintiff's claim against a defendant/third-party plaintiff. See Doucette v. Vibe Records, Inc., 233 F.R.D. 117, 121 (E.D.N.Y. 2005) (Spatt, J.) ("Regardless of the type of claim asserted [in a third-party

complaint], 'the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery,' or 'the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant.'") (quoting United States v. Joe Grasso & Son, Inc., 380 F.2d 749, 751-52 (5th Cir. 1967)).[6]

Cantu's claim against Flanigan is for defamation, and Flanigan's third-party complaint makes no allegation that the third-party defendants are liable for Flanigan's alleged defamation of Cantu. As such, the third-party complaint must be dismissed. See Kenneth Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 31 (2d Cir. 1984) (affirming dismissal of third-party complaint where "[w]hatever the [third-party defendants] did, it simply ha[d] nothing to do with the harm [defendant] allegedly caused the plaintiffs"); Doucette, 233 F.R.D. at 120-121 (dismissing third-party complaint that did not allege liability of third-party defendants for damages claimed by plaintiff).

Although not raised by Cantu, the third-party complaint is also improperly brought under Rule 14(a) because it was filed

---

[6] Ironically, the case cited by Flanigan in defense of his third-party complaint, United States v. Olavarrieta, 812 F.2d 640 (11th Cir. 1987), makes this very point. Olavarrieta, 812 F.2d at 643 (affirming dismissal of third-party complaint against a university for breach of contract for failing to award defendant a J.D. degree, where defendant was being sued by the government for defaulting on his student loans).

more than ten days after Flanigan filed his answer to the complaint, and Flanigan did not first obtain leave of court. Rule 14(a) expressly mandates that, if he brings a third-party complaint more than ten days after serving the original answer, "the third-party plaintiff must obtain leave on motion upon notice to all parties to the action." Fed. R. Civ. P. 14(a). For this additional reason, the third-party complaint is dismissed.

### c.  Statute of Limitations

As discussed above in the context of Cantu's motion to dismiss the counterclaim, both the Texas and New York statutes of limitations appear to bar Flanigan's claims of interference with the pre-1986 contract.  In addition, neither state recognizes interference with contract as a continuing tort.  Accordingly, the third-party complaint is time-barred under the laws of both states, unless Flanigan can allege acts of interference by the third-party defendants that occurred during the limitations period.  Because the third-party complaint does not conform to Rule 14(a), leave will not be given to replead the third-party complaint.

## Conclusion

For the foregoing reasons, Cantu's motion to dismiss the third-party complaint is granted. Cantu's motion to dismiss the counterclaim is granted, with leave to replead. If he is able to allege any acts of interference with property rights occurring since August 15, 2002, Flanigan shall file an amended counterclaim within thirty days.

Dated:   Brooklyn, New York
         May 24, 2006

                                    SO ORDERED

                                    _____/s/_____
                                    David G. Trager
                                    United States District Judge