UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X
JOSE RAMIRO GARZA CANTU,

      Plaintiff,               <u>MEMORANDUM AND ORDER</u>

  -against-                 Civil Action No.
                                     CV-05-3580 (DGT/RLM)

BILLY R. FLANIGAN, UNKNOWN/UNNAMED
DEFENDANT, AND DOES 1 through 10,
inclusive,

      Defendants.
--------------------------------X

TRAGER, J.:

    Plaintiff José Ramiro Garza Cantu ("Cantu") brought this
diversity action against <u>pro</u> <u>se</u> defendant Billy R. Flanigan
("Flanigan") alleging defamation and intentional and negligent
interference with economic advantage.  Flanigan counterclaimed,
alleging intentional interference with contract, and filed a
third-party complaint against other individuals, also alleging
intentional interference with contract.


**Background**

    The allegations in this case have their genesis in a
forfeiture action that was brought in this court in 2002.  Many
of the background facts have been gleaned from this court's prior
opinion that, in turn, adopted facts from the underlying
forfeiture action.  See <u>Cantu v. Flanigan</u>, CV-05-3580 (E.D.N.Y.
May 24, 2006) ("<u>Cantu I</u>").  On June 17, 2002, the United States

District Court for the Eastern District of New York granted the
United States an order that restrained all funds in an account at
Banorte Securities, owned by the Petroleum Workers Union of the
Republic of Mexico (the "Union").  In re: All Funds in Account
6MH215309, M-02-906 (RML) (E.D.N.Y. 2003).  The United States had
requested the order in connection with a pending Mexican
government criminal investigation relating to the embezzlement of
funds from Petroleos Mexicanos ("PEMEX"), an oil and gas company
owned by the Mexican government.  The Mexican government had also
restrained all funds in another account owned by the Union (the
"Mexican account").

The Mexican government requested that the United States seek
a modification to the June 2002 restraining order, permitting the
funds to be transferred to the Mexican account.  Although the
Union consented to the modification, Flanigan, who was not a
party to the forfeiture action, objected.  He claimed rights to
these funds through Arriba, a corporation that obtained a $92
million default judgment against the Union in 1986 (the "1986
Judgment"), alleging that the funds were related to the 1986
Judgment.

On January 10, 2005, Flanigan submitted to the court a
document entitled "Amicus Brief," which objected to modifying the
restraining order and alleged wrongful acts committed by PEMEX,
the Union and other individuals involving corruption,

racketeering, money laundering and murder. Cantu is one of the individuals who was named in the Amicus Brief. Subsequently, some of the allegations contained in the Amicus Brief also appeared in the Mexican media. In an order dated Aug. 9, 2005, the court noted that Flanigan had never been granted leave to file an amicus brief, and the brief was, therefore, not part of the record in that case.

On July 29, 2005, Cantu brought the present suit against Flanigan for defamation, interference with contractual relations, and intentional and negligent interference with prospective economic advantage based on the allegations in the Amicus Brief. On August 15, 2005, Flanigan counterclaimed, alleging intentional interference with contract. Essentially, Flanigan maintains that Cantu's efforts to prevent him from collecting on the 1986 Judgment constitute intentional interference with contract or property rights. Flanigan also filed a third-party complaint against a litany of defendants, alleging identical claims of intentional interference with contract. In response, Cantu moved to dismiss both the counterclaim and the third-party complaint.

## Prior Opinion

On May 24, 2006, this court granted Cantu's motion to dismiss the third-party complaint. Cantu I, at 18. Cantu's motion to dismiss Flanigan's counterclaim on grounds that it was

3

barred by the statute of limitations was also granted, with leave to replead.  Id.  Flanigan was granted thirty days to file an amended counterclaim if he could allege any acts of interference with property rights occurring since August 15, 2002.  Id.

On June 20, 2006, Flanigan submitted his First Amended Counterclaim for Intentional Interference with Contract and Property Rights ("FACC").  Flanigan maintains that he had valid and existing property and contract rights related to: (1) an original residual oil contract giving rise to the 1986 Judgment, which was issued by the 281st Judicial District Court of Harris County, Texas in Case No. 85-35446; (2) the 1986 Judgment itself; and (3) a post-judgment garnishment action.  FACC, ¶ 1.  As was discussed in Cantu I, the date the residual oil contract was entered into predates 1986, because its breach resulted in the 1986 Judgment.  Cantu I, at 8.  Flanigan asserts that Cantu intended to induce a breach of this alleged contract, entered into a conspiracy to take Flanigan's profit from the contract, and interfered with Flanigan's property and contract rights. Flanigan specifically alleges the following conduct occurring since August 15, 2002.

Flanigan alleges that on May 24, 2004, Cantu participated in a "fraudulent settlement agreement and contract" with James B.

Gomez,[1] the Union and its wholly owned Commission of Contracts (both of whom are judgment debtors) and others. FACC ¶ 2(a). Allegedly, Cantu participated in this scheme in order to receive future "kick-backs" on the collection of the 1986 Judgment. FACC ¶¶ 2a, 2b. Flanigan further alleges that Cantu and others participated in taking approximately $250 million, which PEMEX loaned to the Union to "take care of" Flanigan, and that this scheme also related to the 1986 Judgment. In addition, Flanigan alleges that in September, 2002, Cantu participated in a bribe in order to delay Flanigan's collection and enforcement of the 1986 Judgment. FACC ¶ 2(c). Lastly, Flanigan alleges that in 2005, Cantu hired agents, who concealed their true identities as agents of Cantu and tried to obtain confidential information from Cantu regarding his collection efforts of the 1986 Judgment.[2]

On July 10, 2006, Cantu responded with a motion to dismiss Flanigan's FACC on the ground that, as with Flanigan's original, dismissed counterclaim, the FACC is barred by the statute of limitations. On January 10, 2007, Cantu filed a motion for summary judgment on similar grounds.

---

[1] According to Flanigan, James B. Gomez, the Bahamian Receiver for Arriba Limited, is the "alter ego" of David B. Black, Flanigan's former attorney.

[2] In his FACC, Flanigan only refers to one Mexican attorney, Olguin, who concealed his identity to gain information about Flanigan. Later, in his Response papers, he refers to "agents," suggesting that several individuals were involved.

Flanigan has also moved for summary judgment on the grounds that Cantu's libel action should be dismissed because Flanigan's statements were true, and thus not defamatory. Additionally, on January 29, 2007, Flanigan moved for summary judgment alleging absolute immunity for judicial filings because he maintains that he submitted the Amicus Brief containing the alleged defamatory statements about Cantu to the court before he made the statements to the Mexican media. Aff. of Flanigan in Supp. of Summ. J., ¶ 7.

## Discussion

### (1)

### Interference with Property Rights

**a. Motion to Dismiss Standard**

A motion to dismiss under Rule 12(b)(6) is proper when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Commercial Cleaning Serv., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001). Although the court construes the counterclaim in the light most favorable to the counterclaimant and accepts all well-pleaded factual allegations as true, the court is not required to accept as true conclusory allegations that are unsupported by factual assertions. Tassy v. Brunswick

Hosp. Center, Inc., 296 F.3d 65, 67 (2d Cir. 2002); see also De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).

**b.    Plaintiff's Motion to Dismiss the FACC**

Cantu's motion to dismiss Flanigan's FACC is premised on the argument that there is no substantive difference between Flanigan's original counterclaim for intentional interference with contract and the FACC alleging intentional interference with contract and property rights.  Specifically, Cantu asserts that Flanigan's FACC is barred by the statute of limitations.  As was discussed in Cantu I regarding Flanigan's initial counterclaim, any contract between Flanigan and a third party that gave rise to the 1986 Judgment was both formed and breached prior to that judgment.  Cantu I, at 8.  The Texas statute of limitations for intentional interference with contract or property rights is two years.  First Nat'l Bank of Eagle Pass v. Levine, 721 S.W.2d 287, 289 (Tex. 1986); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2005).  New York's statute of limitations for the same tort is three years.  See Spinap Corp. v. Cafagno, 302 A.D.2d 588, 588, 756 N.Y.S.2d 86, 87 (2d Dep't 2003); N.Y. C.P.L.R. § 214[4].[3]  To the extent that the FACC alleges interference with

[3] Flanigan resides in Texas and the disputed funds are potentially located in New York.  The actions alleged in the FACC appear to have taken place in the Bahamas, Mexico and Texas.  Cantu I analyzed the statute of limitations under both Texas and New York tort law because Flanigan's counterclaim did not

contract, it is time-barred and Cantu's motion for summary judgment is granted. However, the FACC additionally alleges that Cantu has interfered with his efforts to collect on the 1986 Judgment.

### i. Identification of a property right

Flanigan appeared to argue in his initial counterclaim that Cantu not only interfered with the pre-1986 residual oil contract, but that he also tortiously interfered with Flanigan's contractual relations after that. <u>Cantu I</u>, at 11. Flanigan was granted leave to amend his counterclaim to assert any acts of interference with his alleged property and contract rights occurring after August 15, 2002, three years before the filing of his initial counterclaim, in order to comply with the longer New York statute of limitations. <u>Id.</u> at 13.

Flanigan styles his FACC as a claim for intentional interference with contract and property rights. In addition to the time-barred interference with contract claim, Flanigan is also alleging that Cantu has interfered with his ability to collect on the 1986 Judgment. Thus, the 1986 Judgment would appear to be the property right with which Flanigan alleges that

---

describe the actions or location of Cantu when he allegedly precipitated the breach of contract. Because neither party has argued for the applicability of Mexican or Bahamian law in either the prior motion or present motion, the analysis here will be limited to Texas and New York law.

Cantu has interfered within the limitations period.

As an initial matter, it is not at all clear that the 1986 Judgment is enforceable.[4] Flanigan's efforts to collect on the judgment have spawned litigation in several courts, and the records of the various litigations are not readily available. From those court opinions that are available, however, it appears that Flanigan has been stymied in his quest to collect on the default judgment by assertions of foreign sovereign immunity, among other defenses. See, e.g., Comm'n of Contracts of the Gen. Executive Comm. of the Petroleum Workers Union of the Republic of Mexico v. Arriba, Ltd., 882 S.W.2d 576 (Tex. App. 1994); Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 537 (5th Cir. 1992).

Notwithstanding these hurdles to enforcement, from the face of the FACC and from the above-mentioned court opinions, it also appears that Flanigan's opponents have been willing on at least two occasions to negotiate settlements with him, giving credence to his assertions that the 1986 Judgment, enforceable or not, has some value. Accordingly, viewing the counterclaim in the light most favorable to Flanigan, Flanigan has asserted the existence of a property right within the limitations period.

---

[4] Indeed, the Texas statute of limitations for reviving a dormant judgment has lapsed. Tex. Civ. Prac. & Rem. §§ 31.0006, 34.001 (Vernon 2007)

### ii.  The alleged interference

Flanigan alleges: (1) that Cantu entered a fraudulent settlement agreement on May 24, 2004; (2) that Cantu and others took $250 million that had allegedly been earmarked for Flanigan, of which they "made available" $8 million for payment of a bribe to delay enforcement of the 1986 Judgment; and (3) that Cantu sent an investigator to determine what collection efforts Flanigan planned in 2005.  Cantu argues that Flanigan has once again failed to state a claim, but he focuses his argument on an alleged failure by Flanigan to point to the existence of a valid contract or property right within the limitations period.  As stated above, Flanigan has alleged the existence of a limitations period property right.  Accordingly, the next question is whether Flanigan has stated a claim.

Although Flanigan has labeled his counterclaim as one for "interference with contract and property rights," a closer examination of the allegations contained within it reveals that he is attempting to claim fraud.[5]  The first action alleged in

---

[5] As a <u>pro se</u> litigant, Flanigan's pleading is to be construed liberally.  <u>See</u> <u>Green v. U.S.</u>, 260 F.3d 78, 82 (2d Cir. 2001).  However, it bears mentioning that Flanigan is a <u>pro se</u> litigant with a purportedly multi-million dollar claim.  The fact that he has been unable to secure representation for this action speaks volumes about its merit.

Indeed, construing his claim literally, as a common law action for interference with property rights, would not save it. Absent the judgment debtor's insolvency, there can be no cause of action against Cantu for doing business with the judgment debtor,

the FACC is that Cantu and others entered a fraudulent settlement

agreement with the Bahamian receiver for Arriba Limited,

Flanigan's former company.  FACC ¶ 2a.  The allegation is made in

an incoherent, page-long single sentence that does not explain

what was fraudulent about the settlement agreement.  Nor does it

explain how Cantu is liable for brokering a settlement between

Flanigan's former company and the judgment debtor.  Flanigan

claims that the settlement was "filed for approval with the Court

in the Bahamas on July 2, 2004."  FACC ¶ 2a.  If Flanigan

believes that the judgment debtor did not comply with the terms

of the settlement agreement, his remedy is to move the Bahamian

court to enforce the settlement.  In no event do the allegations

regarding the allegedly fraudulent settlement agreement give rise

to any cognizable cause of action against Cantu, as Flanigan has

not alleged that Cantu made any false statement regarding the

settlement agreement, or that Flanigan justifiably relied on any

such false statement.  See Raytheon Co. v. AES Red Oak, LLC, 37

A.D.3d 364, 364-65, 831 N.Y.S.2d 54, 55 (1st Dep't 2007)

(affirming dismissal of claims of fraudulent inducement to enter

a settlement agreement).

　　　　Cantu argues that the second action alleged in the FACC –

that he took $250 million from the judgment debtor that PEMEX had

_____

regardless of how much money the judgment debtor purportedly owes
Flanigan.

loaned it to "take care of" Flanigan and "made available" $8
million for a bribe to an unspecified individual – is "inherently
incredible." Pl.'s Reply in Supp. of Mot. to Dismiss ("Pl.'s
Reply") at 2. Cantu has also filed a motion for summary judgment
on the FACC, and in those motion papers he suggests that Flanigan
is bitter because the judgment debtor chose to do unrelated
business with Cantu rather than pay Flanigan the money it owed on
the 1986 Judgment. Pl.'s Mem. of Points and Authorities in Supp.
of Mot. for Summ. J. at 7. Although Flanigan does not
specifically identify this cause of action other than generically
referring to interference with a property right, it appears to
sound in fraudulent transfer. However, a fraudulent transfer
claim under either the Uniform Fraudulent Transfer Act, as
adopted by Texas, Tex. Bus. & Com. Code Ann. §§ 24.005-24.006
(2007), or the Uniform Fraudulent Conveyance Act, as adopted by
New York, N.Y. Debt. & Cred. §§ 270-283 (2001), could only be
brought against the judgment debtor and would require a showing
that the judgment debtor was insolvent. Flanigan has not brought
this claim against the judgment debtor, nor has he alleged that
the judgment debtor is insolvent. Accordingly, he can have no
claim against a third party for the judgment debtor's failure to
pay the judgment.

Cantu argues that the third action alleged in the FACC –
that he hired a Mexican attorney to obtain confidential

information regarding Flanigan's collection efforts – is "innocuous." Pl.'s Reply at 3. The FACC claims that the Mexican attorney concealed the true identity of his principal. However, the Mexican attorney was under no legal obligation to disclose the identity of his client. Moreover, the FACC does not explain what, if any, information the Mexican attorney gleaned from the meeting and how any such information was used to Cantu's benefit or to Flanigan's detriment.

To the extent that Flanigan is attempting to make out a cause of action for fraud based on the actions of the Mexican attorney, his claim fails. "Proof of fraud under New York law requires a showing that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." <u>Wall v. CSX Transp. Inc.</u>, 471 F.3d 410, 415-16 (2d Cir. 2006) (internal quotation marks omitted). Texas law requires the same elements. <u>Rogers v. Alexander</u>, __ S.W.3d __, 2007 WL 1866798, at *8 (Tex. App. June 29, 2007) ("The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation intending that the other party

act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."). Flanigan has not made out the first element of a fraud claim, because he has not alleged that the Mexican attorney had a duty to disclose the identity of his client, nor that he misrepresented his client's identity. Equally fatal to his claim, Flanigan has not stated how he was injured by the Mexican attorney's inquiries. Thus, Flanigan has not made out a claim for fraud.

In sum, even though the FACC may sufficiently allege a property right that existed within the limitations period, Flanigan has not stated any legally cognizable claim against Cantu. Accordingly, the motion to dismiss the FACC is granted.[6]


**(2)**

**Defendant's motions for summary judgment
regarding the defamation claim**

On March 26, 2006, Flanigan moved for summary judgment to dismiss Cantu's defamation action against him. Flanigan alleges that there is no triable issue of material fact as to the truthfulness of the assertions he made in the Amicus Brief. Pro Se Aff. at 1. On February 6, 2007, Flanigan filed a second

---

[6] Because the FACC is dismissed, it is not necessary to consider the remainder of Cantu's motion for summary judgment regarding the FACC.

motion for summary judgment on the defamation claim, this time alleging that the statements in the Amicus Brief were judicially privileged.

**a.    Summary judgment standard**

Summary judgment will be granted when there is no genuine issue as to any material fact.  Fed. R. Civ. Pro. 56(c). However, summary judgment must be denied if the evidence presented by the non-moving party "is such that a reasonable jury could return a verdict" on its behalf.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, the court's task is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." Id at 248.

Courts must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).  The non-movant, however, must do more than simply rely on conclusory allegations or unsubstantiated speculation.  He or she must set forth specific facts demonstrating that there is indeed a genuine issue for trial. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

**b.  Flanigan's truth defense**

To prove a slander, defamation or libel claim, a plaintiff must provide evidence that there was: (1) a false and defamatory statement; (2) a publication to a third party; (3) fault (either negligence or malice depending on the status of the libeled party); and (4) special damages suffered or slander _per_ _se_.  Wang v. State Univ. of New York Health Sciences, 470 F. Supp. 2d 178, 189 (E.D.N.Y. 2006); Penn Warranty Corp. v. DiGiovanni, 10 Misc. 998, 1002, 810 N.Y.S.2d 807, 813 (Sup. Ct. N.Y. County 2005).

Flanigan contends that he is entitled to summary judgment because the "communications" that were reported to have come from him in the Amicus Brief were "true and were previously published by reliable sources."  Pro Se Aff. at 1.  The communications at issue include the following allegations: that Cantu is a manager for a racketeering enterprise who illegally laundered money; and that Cantu caused gas prices in the United States to increase, circumvented sanctions in Iraq, smuggled crude oil into the United States, paid a bribe to the Mexican President and committed various other criminal acts.  Def.'s 56.1 Statement, ¶¶ 1-8.  Flanigan offers no evidence in support of these allegations, and Cantu vigorously contests each of Flanigan's allegations in a signed affidavit, flatly denying involvement in any criminal enterprise.  Pl.'s 56.1 Statement, ¶¶ 1-8.  These

are classic examples of genuine issues of material fact.[7]  The

parties have alleged diametrically opposed versions of the facts.

Under these circumstances, summary judgment is foreclosed.  See

Sound City Elecs. Corp. v. R.B.C. Radio, Inc., No. 99-cv-9309,

2002 WL 15639, at *6 (S.D.N.Y. Jan. 7, 2002) (holding that issues

of fact as to truth of allegations precluded summary judgment on

defamation claim).  Accordingly, because the material facts are

in dispute, defendant's motion for summary judgment with respect

to plaintiff's defamation claim is denied.


c.   **Judicial privilege**

     Flanigan has separately moved for summary judgment on the

defamation claim on the ground of absolute immunity for judicial

filings.[8]  He asserts that "all communications made by [him] that

form the basis of Plaintiff's complaint for which Plaintiff Cantu

complains are defamatory were and are, judicially privileged and

contained in a filing made by [him] in a federal seizure action."

---

     [7]  Cantu has also objected to Flanigan's affidavit and
exhibits on grounds of hearsay, improper legal conclusions and
arguments and improper authentication.  Pl.'s Evidentiary
Objections to Def.'s Evidence, ¶¶ I.-IV.

     [8]  On February 13, 2007, Cantu submitted a motion objecting
to Flanigan's serial filing of summary judgment motions,
specifically Flanigan's motion for summary judgment on the ground
of judicial privilege.  Because the court has discretionary power
to control its docket in the interest of justice and efficiency,
this objection is overruled.  Moreover, in Cantu I, the court
considered Cantu's pro se status and encouraged him to assert the
judicial immunity defense.

Flanigan's Aff. in Supp. of Mot. for Summ. J. at ¶ 1.[9]

Cantu's July 29, 2005 complaint alleges that Flanigan submitted his Amicus Brief to the Mexican media prior to submitting it to the court. Compl. at ¶ 16. However, as noted in Cantu I, the article entitled "La Mafia de PEMEX," published in the periodical Processo, recites portions of the Amicus Brief nearly verbatim and was published after the brief in question was submitted to the court. Cantu I, at 4.

Cantu argues that Flanigan's second motion should be denied and that defendant cannot take advantage of the privilege for the following reasons: (1) the brief was not properly filed with the court and was technically not part of the judicial record; (2) Flanigan provided José Antonio Jaquez Enriquez ("Enriquez"), a reporter for Processo magazine, the same defamatory statements in the Amicus Brief over one month before he attempted to file the brief with the court; and (3) defendant made other defamatory statements regarding Cantu both before and after he filed the brief. Aff. of Michael Perez, ¶¶ 2-4; Enriquez Aff.; Enriquez Decl.

"A privileged communication is one which, but for the

_____

    [9] As a preliminary matter, neither Flanigan's affidavit nor his legal memorandum are signed and, therefore, they do not comply with Fed. R. Civ. P. 56. However, even if Flanigan's affidavit could be accepted as evidence, his motion for summary judgment would, nonetheless, be denied.

occasion on which it is uttered, would be defamatory and actionable." Park Knoll Assoc. v. Schmidt, 59 N.Y.2d 205, 208, 451 N.E.2d 182, 184, 464 N.Y.S.2d 424, 426 (1983). In the course of judicial proceedings, the judge, jurors, attorneys, parties and witnesses are protected by the privilege. Id.; see also Rest. Torts 2d §§ 585-589.

Cantu's first defense to Flanigan's privilege claim is that Flanigan's Amicus Brief was not technically part of the Record and, thus, not judicially privileged. However, alleged defamatory statements that are contained in documents submitted to the court may be privileged if they are material and relevant to the proceedings. See Sinrod v. Stone, 20 A.D.3d 560, 562, 799 N.Y.S.2d 273, 274 (2d Dep't 2005). The materiality and relevance of the Amicus Brief need not be determined at the present time, however, because Cantu's evidence that Flanigan leaked the substance of the Amicus Brief to a reporter before filing it with the court raises issues of fact which preclude granting summary judgment on the ground of judicial privilege.

Cantu asserts that Flanigan made the same defamatory statements to Enriquez, the Processo magazine reporter, before he filed the Amicus Brief with the court on January 10, 2005. Enriquez himself submitted a declaration stating that "[t]he amicus curiae brief from which I elaborated my February 13, 2005 article . . . was delivered to me directly by [Flanigan] . . .

19

sometime around the end of December 2004."  Enriquez's Decl.,

¶ 4-7.  Cantu further avers that Flanigan made additional

defamatory remarks before and after the filing of the brief.  If

Enriquez's claims are true, then Flanigan's statements are not

protected by the judicial privilege.  See Herlihy v. Metro.

Museum of Art, 214 A.D. 2d 250, 258, 633 N.Y.S.2d 106, 111 (1st

Dep't 1995) (holding that defendants who had informed their

employer that their supervisor had made anti-Semitic remarks were

not conferred with a judicial privilege because they did not make

their statements during, or for, judicial purposes); Lawrence v.

Riffle, 62 A.D.2d 1093, 1094, 403 N.Y.S.2d 592, 594 (3d Dep't

1978) (holding that immunity did not attach where alleged

defamatory statements were made before the commencement of the

judicial proceeding).  Accordingly, because these disputed facts

are material and resolution of them will determine whether

Flanigan is entitled to immunity, defendant's motion for summary

judgment is denied.

## Conclusion

For the foregoing reasons, Cantu's motion to dismiss Flanigan's FACC is granted. Cantu's motion for summary judgment on the FACC is granted. Flanigan's motion for summary judgment on the defamation claim on the grounds that the communications are true is denied. Flanigan's motion for summary judgment on the ground that he is protected by the judicial privilege is denied.


Dated:    Brooklyn, New York
          August 27, 2007

                                SO ORDERED:


                                _____/s/_____
                                David G. Trager
                                United States District Judge